**STATE of Minnesota, petitioner, Appellant,**

v.

**Curtis Marcell SMALLWOOD, Respondent.**

**No. C3–97–1636.**

Supreme Court of Minnesota.

April 15, 1999.

Michael A. Hatch, Minnesota Attorney General, St. Paul, James C. Backstrom, Dakota County Attorney, Phillip D. Prokopowicz, Statia D. Hendrix, Assistant County Attorneys, Hastings, for appellant.

John M. Stuart, Minnesota State Public Defender, Steven P. Russett, Assistant State Public Defender, Minneapolis, for respondent.

## OPINION

### RUSSELL A. ANDERSON, Justice.

In this case we are confronted with numerous issues surrounding the arrest and trial of respondent, Curtis Marcell Smallwood, who was found guilty by a Dakota County jury of first-degree burglary pursuant to Minn.Stat. § 609.582, subd. 1(a) (1998) and sentenced as a dangerous offender to 240 months (20 years) confinement. Smallwood's conviction was reversed and a new trial ordered by the court of appeals on the grounds that the prosecutor committed misconduct in his opening statement when he told the jury that Smallwood had offered to plead guilty to a police officer in exchange for a guidelines sentence. *State v. Smallwood*, No. C3–97–1636, 1998 WL 404860 (Minn.App. July 21, 1998). We granted the state's petition for further review and now reverse the court of appeals.

At about 4 a.m. on October 31, 1996, L.M. was asleep in her second-floor bedroom in Rosemount, Minnesota, when she was awakened by a shirtless man standing over her, adjusting the button on his pants and rubbing her thigh. L.M. protested and the man threatened, "I'll cut you." L.M. screamed for her daughter and the man fled down the stairs and out the door. L.M. immediately called 911.

Responding within two minutes of L.M.'s 911 call, Rosemount police officer John Sommers arrived in L.M.'s neighborhood. Sommers saw a car heading in a direction away from L.M.'s house. The car did not have its headlights on. Sommers observed that the driver matched the general description of a black male that L.M. had given to the dispatcher. Sommers turned on his lights and siren and stopped Smallwood's car. A second police officer, Grant Thorstad, arrived and then left to talk to L.M.

While Thorstad was at L.M.'s residence, Sommers told Smallwood that he was investigating a burglary and the suspect was a black male. Sommers observed that Smallwood was "very excited" and perhaps under the influence of drugs or alcohol. Sommers then placed Smallwood in the back seat of his squad car and told him that he was not under arrest but was being detained.

Thorstad returned to Smallwood's car with L.M. Thorstad asked L.M. if she could identify Smallwood as the man who assaulted her, but she was unable to make an identification, explaining that it was dark in her bedroom and that she has poor eyesight. L.M. told the police that she thought Smallwood was heavier and older than the man who had assaulted her.

Thorstad then sought Smallwood's permission to search his car. At the omnibus hearing, Thorstad testified that Smallwood said, "yeah, go ahead." Smallwood told the officers he was worried they would find evidence of an open bottle in the car, but the police told Smallwood not to worry about an open bottle charge. The search continued, and Thorstad found $79 in cash and a bank deposit slip. The victim had reported that $79 was missing, and the officers verified that the deposit slip had L.M.'s name, address, and account number on it. The police arrested Smallwood for burglary and gave him his *Miranda* warnings.[1]

Sommers drove Smallwood to the Dakota County jail; on the way, Smallwood talked to Sommers about making a deal. The officer testified about the conversation at the omnibus hearing:

> He had stated that he wanted to talk to somebody about making a deal, about getting out of the situation. He said he knew people, or had information about people involved in drugs or narcotics. I explained to him that I was not a person that could do anything, I was doing my job in regards to the burglary call. But he brought that up several times and I explained that I couldn't talk to him about that. It wasn't my position.

At the jail, Sommers asked Smallwood if he wanted to give a statement. Smallwood said he did not want to talk to Sommers if Sommers was not in a position to make a deal. Later, Smallwood gave a tape-recorded statement to investigator Mark Ro-

bideau. During this statement Smallwood said he was high on cocaine and alcohol at the time of his arrest. Smallwood admitted he was looking for an unlocked door—in fact admitted trying to get into several houses—in L.M.'s neighborhood because he needed money to buy drugs. Smallwood also acknowledged that if L.M.'s money was found in his car, it made sense that he might have taken it.

During the questioning, Smallwood twice asked Robideau to turn off the tape recorder. Robideau complied and testified at the omnibus hearing that Smallwood wanted to "plead guilty and accept sentencing with the Sentencing Guidelines and that he wanted me to go back and talk with the county attorney and make that proposal." Robideau testified that he told Smallwood "I couldn't make any deals at that time nor could I make deals at any time, that I would at least talk to the county attorney about that request."

The next day, November 1, 1996, Robideau returned and talked with Smallwood. Robideau was unaware that a lawyer had been appointed for Smallwood. Robideau told Smallwood about his conversation with the county attorney, telling Smallwood the county attorney was "being a jerk." Robideau then engaged Smallwood in a series of leading questions, asking:

> And you told me yesterday that you would be willing to plead guilty at first appearance, am I right?
>
> Uh huh.
>
> Okay. And you've said that you'd be willing to do that if they followed the sentencing guidelines.
>
> Uh huh. * * * What'd he say?
>
> And you'd still be willing to do that?
>
> Yeah.
>
> Okay. Why, why would you be willing to do that? I mean what's in it for you?

---

1. Later, on November 2, 1996, L.M. found checks, a deposit slip, and a credit card belonging to Smallwood in her back yard.

To get it over with. Huh uh. Do you think I'm gonna beat it if I had a chance to beat it? I don't either, so, that's why.

Smallwood eventually agreed to plead guilty to first-degree burglary with an agreement that he could withdraw his plea if the court imposed a sentence greater than 10 years. The court indicated its intention to impose a 20–year sentence, and Smallwood withdrew his guilty plea.

Prior to trial, Smallwood sought to suppress the evidence seized from his car, claiming he did not give consent to the search. He also sought to have his statements suppressed because Robideau turned off the tape recorder during his questioning of Smallwood, arguably in violation of *State v. Scales*, 518 N.W.2d 587 (Minn.1994) (requiring that all custodial interrogations shall be electronically recorded where feasible). Smallwood did not testify at the omnibus hearing, and the omnibus court denied Smallwood's motions. Smallwood was permitted to reopen these issues before the trial court. The state agreed that the statement given by Smallwood on November 1, 1996, was inadmissible because counsel had been appointed to represent Smallwood and Smallwood's counsel was not aware of the interview. Before the trial judge, Smallwood testified in support of his motions, again arguing that his October 31 statement should be suppressed because of a *Scales* violation. The trial court denied Smallwood's motions.

During opening statements, the prosecutor told the jury: "You're going to hear from Investigator Robideau the defendant at one point in time even admitted that he wanted to plead guilty to this particular offense and receive an appropriate sentence." When the prosecutor made the remark to the jury, Smallwood's counsel did not object, but the next morning brought a motion in limine to preclude the state from introducing evidence of Small-wood's offer to plead guilty in return for a guidelines sentence. The trial court granted the motion, ruling that evidence of Smallwood's offer to plead guilty was inadmissible pursuant to Minn. R.Crim. P. 15.06.

At trial, Robideau testified about the statement given by Smallwood on October 31, 1996. Robideau testified, in part:

And you went over some of the facts with him and tried to get him to admit that he did such and such and occasionally he'd say, well, I must have if you say so or the police officers say so or [the victim] says so; but he didn't specifically say he remembered that, did he?

Well, it depends on which statement we're talking about.

We're talking about the statement here that just went into evidence.

On the 31st?

Uh-huh.

In that statement he mainly remembered looking for money and that he was looking for the money because of a problem with cocaine and that he went up to houses trying to get into various houses.

He never admitted going into a house, though, did he?

On that particular date I—I believe when I talked to him on the 31st—

Smallwood's counsel objected at that point in the questioning. Smallwood's counsel moved for a mistrial on the grounds that Robideau's unsolicited testimony implied that there was a second statement in which Smallwood admitted his guilt. The trial court denied the motion but offered to give a curative instruction,[2] which was declined because defense counsel thought such an instruction would only serve to emphasize the testimony. The jury found Smallwood guilty of first-

---

**2.** In offering the curative instruction, the trial court stated: "I * * * defer to defense counsel and ask if she wants me to give some instruction to the jury at this time that there is only one statement which has been received in evidence and that is Exhibit 4."

degree burglary. Smallwood was sentenced pursuant to Minn.Stat. § 609.152 (1998) as a dangerous offender to 240 months (20 years) confinement, the statutory maximum.

The state appeals the court of appeals' decision reversing Smallwood's conviction and ordering a new trial on grounds that the prosecutor committed misconduct during his opening statement. In reversing Smallwood's conviction, the court of appeals did not reach other issues presented by this case. Because we reverse the court of appeals, we will address the following issues in turn: (1) whether it was prosecutorial misconduct to tell the jury during opening statements of Smallwood's offer to plead guilty; (2) whether Rule 410 of the Minnesota Rules of Evidence renders Smallwood's offer to plead guilty inadmissible and whether the prosecutor's opening statement deprived Smallwood of a fair trial; (3) whether officer Robideau's testimony constituted misconduct warranting reversal; (4) whether the trial court committed reversible error by not suppressing evidence found in Smallwood's car; (5) whether the trial court erred by determining that Smallwood's conviction in Maryland for assault and battery constituted a violent crime under Minnesota's dangerous offender statute; and (6) whether the trial court's imposition of a 20–year sentence unfairly exaggerates Smallwood's criminal record and the seriousness of the crime of conviction.

## I. Prosecutorial misconduct

 The first issue presented is whether the prosecutor committed misconduct by informing the jury during opening statements that Smallwood had offered to plead guilty in exchange for a guidelines sentence. In general it is misconduct for a prosecutor to knowingly offer inadmissible evidence for the purpose of bringing it to the jury's attention. *See State v. White,* 295 Minn. 217, 223, 203 N.W.2d 852, 857 (1973). It is also improper for a prosecutor to refer to evidence in an opening statement without a good-faith basis for

believing the evidence is admissible. *See State v. Gaitan,* 536 N.W.2d 11, 16 (Minn. 1995). If the evidence sought to be admitted is questionable, a prosecutor should obtain a ruling from the trial court before commenting on the evidence. *See State v. Kline,* 266 Minn. 372, 382–83, 124 N.W.2d 416, 423–24 (1963).

 Prosecutorial misconduct, including telling the jury of offers to plead guilty, can result in a reversal of a conviction and remand for a new trial. *See State v. Reardon,* 245 Minn. 509, 73 N.W.2d 192 (1955) (ordering new trial after prosecutor told jury that defendant had previously pleaded guilty to offense); *see also State v. Sha,* 292 Minn. 182, 193 N.W.2d 829 (1972) (ordering new trial when prosecutor elicited testimony that defendant said he wanted to plead guilty).

What distinguishes this case from our decisions in *Reardon* and *Sha* is that here, the prosecutor had a good-faith basis for telling the jury of Smallwood's offer to plead guilty. Therefore, the conduct of the prosecutor does not require a new trial. *See Gaitan,* 536 N.W.2d at 16 (explaining that prosecutor needs good-faith basis for believing the evidence offered is admissible).

Two primary reasons lead us to the conclusion that the prosecutor had a good-faith basis for telling the jury of Smallwood's offer to plead guilty. First, the issue of the admissibility of Smallwood's October 31 statement, which included the offer to plead guilty, had been argued to and decided by two different judges. On both occasions, Smallwood argued that his statement was inadmissible, not because it contained an offer to plead guilty, but rather because the police turned off the tape recorder, albeit at Smallwood's request, in violation of *State v. Scales,* 518 N.W.2d 587. Smallwood objected, not once, but twice, to the admission of his October 31 statement, framing the issue both times as a *Scales* violation. The prosecutor, relying on the rulings of two judges

denying Smallwood's motion for an alleged *Scales* violation, had a good-faith basis for believing the testimony was admissible. Second, we have not addressed the issue of whether an offer to a police officer to plead guilty was admissible under our rules of evidence and criminal procedure. Our previous decisions have not answered this question, and the Minnesota Court of Appeals has decided only one case that presented similar facts and issues. *See State v. McBride,* 357 N.W.2d 395 (Minn.App. 1984).[3] Therefore, we conclude that it was not misconduct for the prosecutor to inform the jury of Smallwood's offer to plead guilty.

### II. Offer to plead guilty

■ Having determined that the prosecutor did not commit misconduct, we now turn our attention to the underlying evidentiary issue. That is, whether the Minnesota Rules of Evidence render inadmissible Smallwood's statement that he would offer to plead guilty in exchange for a guidelines sentence.

■ The trial court ruled on a motion in limine following opening statements that evidence of Smallwood's offer to plead guilty was inadmissible pursuant to Minn. R.Crim. P. 15.06.[4] The court of appeals agreed that the statement was inadmissible and concluded that because the prosecutor mentioned Smallwood's offer to plead guilty, reversible error occurred.

We begin our exploration of this issue of first impression with the language of the Minnesota Rules of Evidence. The admissibility of evidence of guilty pleas is governed by Rule 410, which provides:

Evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime or of statements made in connection with any of the foregoing pleas or offers, is not admissible in any civil, criminal, or administrative action, case, or proceeding whether offered for or against the person who made the plea or offer.

The state seeks a bright-line rule similar to the Federal Rules of Evidence that would limit the applicability to Rule 410 to discussions with an attorney for the government. Rule 410 of the Federal Rules of Evidence was amended in 1979 to include the limitation that only those statements "made in the course of plea discussions with an attorney for the prosecuting authority" are inadmissible. Fed.R.Evid. 410. The state asks us to read such a provision into our rules. We reject such an approach, as we did in our previous decision addressing a separate provision of Rule 410. *See State v. Jackson,* 325 N.W.2d 819, 822–23 (Minn.1982). In *Jackson,* we were asked to read into our Rule 410 a provision of Federal Rule 410 that provides that statements made "in connection with" a withdrawn guilty plea could be used for impeachment purposes. We declined to do so, stating "it seems reasonable to conclude that our drafters decided not to provide for either an impeachment or perjury exception." 325 N.W.2d at 823.

The same reasoning applies here. Because the drafters of our rule have chosen not to include language limiting plea discussions to situations where an attorney

---

**3.** We also note that Smallwood did not object to the prosecutor's statement when it was made; instead Smallwood only brought, and was granted, a motion in limine the following day, precluding introduction of evidence of the offer to plead guilty. Furthermore, Smallwood did not seek a curative jury instruction on the issue.

**4.** The trial court's ruling was made pursuant to Minn. R.Crim. P. Rule 15.06. The court of appeals decided the issue under Minn. R. Evid. 410. Determination of procedural matters is a function of the judiciary. *See State v. Johnson,* 514 N.W.2d 551, 553 (Minn.1994). Construction of a rule of procedure is a question of law subject to de novo review. *See State v. Windish,* 590 N.W.2d 311 (Minn., 1999). We conclude that Rule 410 is applicable here.

for the government is involved, we will not read such language into the rule.[5]

We turn to earlier decisions of the federal courts for guidance because, until Federal Rule 410 was amended in 1979, the text of our current Rule 410 and the Federal Rule 410 were similar.[6] The Fifth Circuit considered offers to plead guilty to a police officer or other government agent by reviewing the totality of the circumstances. *See United States v. Robertson,* 582 F.2d 1356, 1366 (5th Cir.1978). In reviewing an offer to plead guilty to a police officer, the Fifth Circuit proposed a two-step process. The first step looks to whether the defendant "exhibited an actual subjective expectation to negotiate a plea at the time of the discussion"; the second step measures whether the defendant's "expectation was reasonable given the totality of the objective circumstances." *Id.*

We are persuaded that the approach outlined by the Fifth Circuit will serve us well in analyzing whether offers to plead guilty are admissible, and we conclude on the record before us that Smallwood's offer to plead guilty was inadmissible under Minn. R. Evid. 410; therefore, the trial court did not abuse its discretion when it granted Smallwood's motion in limine barring the prosecution from introducing evidence of the offer to plead guilty.

While the state concedes that the second statement given by Smallwood to Robideau is inadmissible because Smallwood had retained counsel and counsel was not present at the questioning, we cannot ignore the second conversation in determining whether Smallwood's expectation that he was engaged in plea bargaining was reasonable. A review of the record, including the second interview of Smallwood by Robideau, reveals the following chain of events: Smallwood initiated discussions with Sommers about making a deal while in the squad car shortly following his arrest, and Sommers told Smallwood that he was not in a position to make deals. After Sommers offered to take a statement from Smallwood, Smallwood said he had no interest in talking to anyone not in a position to negotiate a plea. Subsequently, Robideau came on the scene and questioned Smallwood. Robideau did not inform Smallwood that only the prosecutor could make a deal until after Smallwood made his offer to plead guilty. Robideau then agreed to communicate the offer to the prosecutor. Robideau talked to the prosecutor about the deal and reported back to Smallwood. In this second conversation, Robideau attempted to affirm Smallwood's intention to plead guilty in exchange for a guideline sentence by asking leading questions. Smallwood admitted that such a deal would produce a speedy result for him. Furthermore, Robideau indicated that the prosecutor might be interested in information from Smallwood regarding his knowledge of people involved with drugs. Eventually, Smallwood agreed to plead guilty, a plea that was later withdrawn when the sentencing judge rejected the 10-year sentencing cap in the plea agreement.

These facts indicate that Smallwood offered to plead guilty in exchange for a

5. While we have not decided whether an offer to plead guilty can be conveyed to a police officer or any other government agent besides a prosecutor, the court of appeals decided a similar issue in *State v. McBride,* 357 N.W.2d 395 (Minn.App.1984). *McBride,* however, presents distinguishable facts from this case because the defendant in *McBride* did not express an offer to plead guilty; instead the defendant only stated an interest in talking about the case. *Id.* at 397. The court of appeals concluded that such an offer did not constitute a bargained-for exchange and thus was not an offer to plead guilty. *Id.*

6. Federal Rule of Evidence 410 provided, before its amendment in 1980, in relevant part:

Except as otherwise provided in this rule, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer.

guidelines sentence and that the police acted as agents in bringing this offer to the attention of the prosecutor and then relaying information back to Smallwood. The record demonstrates that Smallwood's subjective expectation was to negotiate a plea bargain. Further, by offering to accept a guideline sentence and offering to provide police with information regarding alleged drug dealers, Smallwood's actions satisfy the requirement that plea bargains seek "a concession for a concession, a *quid pro quo.*" *Robertson,* 582 F.2d at 1366.

The second part of the inquiry involves determining whether the defendant's expectation was reasonable given the circumstances. It is apparent from Smallwood's request for a guidelines sentence that he was familiar with the workings of the criminal justice system. Robideau told Smallwood that while he did not have authority to make deals, he would relay the information to the prosecutor. Robideau pitched the deal to the prosecutor and reported back to Smallwood. We conclude that Smallwood's expectation that he was engaging in a plea bargain was reasonable under the circumstances. By acting as a go-between and by reporting that the prosecutor was balking at the deal, Robideau's actions gave Smallwood a reasonable expectation under the circumstances that he was engaged in plea bargaining.

Therefore, Smallwood's offer to plead guilty in exchange for a guidelines sentence was inadmissible under Minn. R. Evid. 410, and the trial court did not abuse its discretion when it ordered, following the prosecutor's opening statement, that evidence of Smallwood's offer to plead guilty was inadmissible.

■■ We are mindful that defendants may attempt to use Rule 410 and try to turn admissions into offers to plead guilty. However, if a defendant is aware that the officer or agent has no authority to plea bargain, the defendant will not be protected by the rule whether the defendant offers to plead guilty or makes statements that would otherwise fall under the rule.

*See United States v. Herman,* 544 F.2d 791, 799 (5th Cir.1977). Furthermore, mere cooperation of a defendant in an attempt to receive favorable treatment by the authorities without a request for consideration is not sufficient to invoke Rule 410's protections. As noted by the Second Circuit:

> Plea bargaining implies an offer to plead guilty upon condition. The offer by the defendant must, in some way, express the hope that a concession to reduce the punishment will come to pass. A silent hope, if uncommunicated, gives the officer or prosecutor no chance to reject a confession he did not seek. A contrary rule would permit the accused to grant retrospectively to himself what is akin to a use immunity. Even statements voluntarily made after *Miranda* warnings would be later objected to on the purported ground that they were made in anticipation of a guilty plea since reconsidered. A balanced system of criminal justice should not be made to function in such a swampy terrain.

*United States v. Levy,* 578 F.2d 896, 901 (2d Cir.1978).

Having decided, first, that the prosecutor did not commit misconduct by telling the jury of Smallwood's offer to plead guilty, and, second, that the exchange between Robideau and Smallwood was an inadmissible plea bargain, we turn our attention to whether the prosecutor's comments during opening statements require reversal of Smallwood's conviction.

■ A conviction may be sustained when the error complained of is harmless beyond a reasonable doubt. *State v. Roberts,* 296 Minn. 347, 353, 208 N.W.2d 744, 747 (Minn.1973). We have said that harmless-error review focuses on whether the guilty verdict actually rendered in a trial was "surely unattributable" to the error. *State v. Juarez,* 572 N.W.2d 286, 292 (Minn.1997). We look to the record as a whole to determine if the verdict is "surely unattributable" to the error. *Id.*

■ Here, the evidence of Smallwood's guilt was overwhelming. The state submitted evidence showing: (1) that Smallwood was in the area of the burglary driving a car with its headlights off at 4:15 a.m.; (2) that no other vehicles were in the area; (3) Smallwood matched the general description of the black male suspect; (4) Smallwood admitted that he was in the area looking for open doors to homes so he could find money for drugs; (5) the amount of money found in Smallwood's car exactly matched the amount of money the victim reported missing; (6) police found a deposit slip with the victim's name, address, and account number on it in Smallwood's car; and (7) checks, deposit slips, and a credit card belonging to Smallwood were found two days later in the victim's back yard.

These facts demonstrate that the verdict was "surely unattributable" to the prosecutor's comments during opening statements. Therefore, the decision of the court of appeals reversing Smallwood's conviction and ordering a new trial is reversed.

### III. Misconduct during officer's testimony

■ Having decided that the prosecutor's reference to Smallwood's offer to plead guilty during opening statements does not constitute reversible error, we turn our attention to issues raised by Smallwood but not decided by the court of appeals. The first of these issues is Smallwood's contention that Robideau committed misconduct because the officer made indirect references to inadmissible evidence during his trial testimony.

The prosecution and Smallwood's counsel agreed that the second conversation between Smallwood and Robideau was inadmissible because it occurred after Smallwood had retained counsel and outside of counsel's presence. Smallwood complains that the second statement was referred to during trial in an exchange that occurred during cross-examination of Robideau by Smallwood's counsel. Smallwood's counsel asked Robideau a question to which Robideau replied: "Well, it depends on which statement we're talking about." Later, Smallwood's counsel asked: "He never admitted going into a house, though, did he?" To which Robideau replied: "On that particular date I—I believe when I talked to him on the 31st-." Smallwood argues that because Robideau was warned by the prosecutor not to reference the November 1 statement, these references imply that while Smallwood did not admit his guilt in the first statement, he did so in the second. Smallwood objected to the officer's testimony and moved for a mistrial, which was denied by the trial court, and Smallwood's counsel rejected the trial court's offer of a curative instruction.

Smallwood relies on *State v. Huffstutler*, a case where we reversed a conviction based upon an improper answer by a deputy. 269 Minn. 153, 154–55, 130 N.W.2d 347, 348 (1964). In *Huffstutler* the answer given by the police officer was both nonresponsive and misleading. *Id.* at 155, 130 N.W.2d at 348. The deputy was asked to "relate his conversation with the defendant." In response, the deputy castigated the reputation of a woman who was with the defendant most of the day of the alleged larceny and who was a defense witness. The deputy testified: "I thought I would just inform you [the defendant] that Catherine had been known to have social diseases on occasion and I might let you know about that so you can be watchful. 'Well,' he answered, 'well, if she has got it, I got it too.'" *Id.* Despite a curative instruction by the trial court, we reversed the defendant's conviction and ordered a new trial. *Id.* at 156, 130 N.W.2d at 349.

Here, while the officer's answers could be perhaps characterized as belligerent, the answers do not rise to the level of misconduct or prejudice in *Huffstutler*. Robideau's answers fall far short of the answer given by the deputy in *Huffstutler*, where the deputy on his own initiative decided to harm the reputation of a witness and the defendant. Therefore, we conclude that the trial court did not err in

denying Smallwood's request for a mistrial.

### IV. Search of Smallwood's car

Smallwood claims the trial court erred in two ways regarding the search of his car by police. First, Smallwood contends that after L.M. was unable to identify him, the police no longer had a reasonable suspicion, making Smallwood's continued detention unlawful. Second, Smallwood argues that he did not voluntarily consent to the search of his car. We review a trial court's decision regarding evidentiary matters for abuse of discretion. *See State v. Byers,* 570 N.W.2d 487, 491 (Minn.1997).

A limited investigative stop is lawful if the police are able to articulate a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). The scope of a stop must be "strictly tied to and justified by" the circumstances which rendered the initiation of the investigation permissible. *Terry v. Ohio,* 392 U.S. 1, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (quoting *Warden v. Hayden,* 387 U.S. 294, 310, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (Fortas, J., concurring)). Police may continue the detention "as long as the reasonable suspicion for the detention remains * * * provided they act diligently and reasonably." *State v. Moffatt,* 450 N.W.2d 116, 119 (Minn.1990).

The trial court ruled that because of L.M.'s poor eyesight and because the room was dark when she encountered Smallwood, L.M.'s failure to identify Smallwood did not end the reasonable suspicion of the police. In addition to the victim's poor eyesight, the police had other reasons to suspect Smallwood: (1) he was near the scene of the burglary; (2) he was driving a car with its headlights off; (3) he fit the general description of the suspect; and (4) he was agitated and excited.

These reasons, combined with the fact that the stop lasted only 10 minutes, support the conclusion that the police had a reasonable suspicion to detain Smallwood and that the police acted diligently and reasonably. *See Moffatt,* 450 N.W.2d at 119.

We now turn to Smallwood's claim that the search of his car was not voluntary. A suspect's voluntary consent to a search is a question subject to "careful appellate review." *State v. George,* 557 N.W.2d 575, 581 (Minn.1997). We have said that we will "examine the totality of the circumstances bearing on whether the defendant voluntarily consented, 'including the nature of the encounter, the kind of person the defendant [was] and what was said and how it was said.'" *Id.* at 580–81 (quoting *State v. Dezso,* 512 N.W.2d 877, 880 (Minn.1994)).

Smallwood advances three primary facts that weigh against the search being voluntary: (1) the coercive atmosphere of the search; (2) the evidence of his intoxication; and (3) Smallwood's concern that police might find an open bottle. We are not persuaded. First, there is no evidence in the record to suggest that the police acted in a threatening way or dealt with Smallwood in any way other than professionally. While the record reveals that Smallwood ended up in the squad car, the record clearly demonstrates that police only placed Smallwood in the squad car after he refused to follow instructions from police to remain in his car. Second, the record does not support that Smallwood's intoxication in any way limited his ability to consent to the search. Rather, the omnibus court found that Smallwood was able to communicate and the testimony of the officers indicated that Smallwood was able to communicate, and in fact specifically articulate his desire to negotiate a plea in accordance with the sentencing guidelines. Finally, Smallwood, a person experienced with the criminal justice system, never revoked his consent to the search,[7] and both

7. Smallwood's understanding of the criminal

justice system weighs against his argument

police officers testified that Smallwood answered in the affirmative when asked if he would consent to a search. The record demonstrates that Smallwood consented to the search of his car.

Therefore, we conclude that the trial court did not err in admitting evidence obtained during the search.

### V. Dangerous offender statute

█ Smallwood was sentenced to 20 years of confinement under Minnesota's dangerous offender statute, Minn.Stat. § 609.152 (1998).[8] Section 609.152 allows courts to impose the statutory maximum sentence if the defendant (1) had "two or more prior convictions for violent crimes"; and (2) was "a danger to public safety." *Id.* at subd. 2. A violent crime means a "violation of or an attempt or conspiracy to violate any of the following laws of this state or any similar laws of the United States or any other state" (including section 609.222, second-degree assault). Minn.Stat. § 609.152, subd. 2.

The trial court found that Smallwood had two or more prior convictions for violent crimes and posed a danger to public safety. In finding that Smallwood's 1981 assault and battery conviction from Maryland constituted a violent crime, the trial court determined that the Maryland offense fit the definition of second-degree assault in Minnesota. *See* Minn.Stat. § 609.222. Under Minnesota's criminal code, second-degree assault occurs when a person "assaults another with a dangerous weapon." *Id.* The trial court reached its conclusion after receiving evidence of the underlying facts of Smallwood's Maryland conviction. The evidence reveals that in 1981 Smallwood drove to a trailer park with a shotgun in his vehicle. He then pointed the shotgun out the window of the vehicle and fired toward a group of people.

Smallwood testified that he fired the shots as a warning to others to leave him alone. Smallwood received a 36–month sentence in Maryland. These facts support the trial court's ruling that the 1981 crime constituted second-degree assault in Minnesota. *See State v. Hough*, 585 N.W.2d 393 (Minn. 1998) (upholding six convictions for second-degree assault after defendant fired shots at principal's home and defendant stated his intention was only to "scare" principal). The three-year sentence imposed also denotes the crime as a felony-level offense in Minnesota. *See* Minn.Stat. § 609.02 (1998) (defining felony as crime for which imprisonment of more than one year may be imposed).

Smallwood argues that the trial court should not have gone beyond the statutory definition of the Maryland offense to consider the underlying facts. The trial court relied upon *Hill v. State*, 483 N.W.2d 57, 61 (Minn.1992) (stating, in context of sentencing guidelines, that sentencing court should consider the nature of the offense for purposes of determining the equivalent Minnesota offense). Smallwood contends that *Hill* should only be applied to sentencing guidelines and not the dangerous offender statute.

The dangerous offender statute does not have the same "nature of the offense" language as the sentencing guidelines; instead, the dangerous offender statute instructs courts to look to the "following laws of this state or any *similar* laws of the United States or any other state." Minn.Stat. § 609.152, subd. 1(d) (emphasis added). The rationale of *Hill*, which allows an inquiry into the underlying facts based on the statute's language allowing courts to look at the "nature" of the offense, can be applied when a court is looking for "similar" crimes before sentencing under the dangerous offender statute. A

that his consent was not voluntary. *See State v. George*, 557 N.W.2d 575, 581, n. 3 (Minn. 1997).

**8.** The Minnesota Legislature has since replaced Minn.Stat. § 609.152 with a new sec-

tion for dangerous and repeat offenders, Minn.Stat. § 609.1095 (1998). Act of April 6, 1998, ch. 367, art. 6, §§ 7, 16, 1998 Minn. Laws 666, 731–35.

sentencing court may have to determine when an offense from a foreign jurisdiction is "similar" to an offense in Minnesota. It is apparent from a review of Maryland's statutes and case law that a common law jurisdiction's definition of a crime might not translate to a jurisdiction such as Minnesota, which has a complex criminal statutory system. Because of the differences between the systems in Maryland and Minnesota and because the dangerous offender statute instructs courts to look at "similar" laws from other jurisdictions, the trial court properly reviewed the facts underlying Smallwood's 1981 conviction for assault and battery in Maryland. Furthermore, we agree with the trial court's determination that the Maryland conviction fits the definition of second-degree assault in Minnesota. Therefore, we affirm the trial court's sentence under Minnesota's dangerous offender statute.

## VI. 20–year sentence

Smallwood's last claim is that the 20–year sentence imposed unduly exaggerates the seriousness of Smallwood's past criminal record, the conduct underlying his offense, and his dangerousness to the public. Generally, we will not interfere with a trial court's discretion in sentencing unless the sentence is disproportionate to the offense. *See State v. Schantzen,* 308 N.W.2d 484, 487 (Minn. 1981). A determination of whether a departure is justified will be based on our "collective collegial experience in reviewing a large number of criminal appeals from all the judicial districts." *State v. Stirens,* 506 N.W.2d 302, 305–06 (Minn.1993) (quoting *State v. Norton,* 328 N.W.2d 142, 146–47 (Minn.1982)).

Here, Smallwood does not dispute that the trial court had the discretion under the dangerous offender statute to depart from the sentencing guidelines to impose the statutory maximum. Instead, Smallwood contends the sentence unfairly exaggerates his criminal record and the seriousness of the crime. The presumptive sentence for

Smallwood's burglary conviction under the sentencing guidelines was 54 months.

Peter D. Marston, the psychologist who prepared an evaluation of Smallwood on behalf of the state, held little hope of Smallwood undergoing successful treatment for his chemical dependency problems and stated that Smallwood was "highly likely" to reoffend. Marston also stated that Smallwood "has developed a sexual component in his burglary actions." Finally, Marston recommended Smallwood's "segregation from society and protection of the community from him."

Linda Van Broeke–Pierce, a psychologist retained by Smallwood's defense counsel, also examined Smallwood. Van Broeke–Pierce recommended an "intensive residential chemical dependency program," sexuality counseling, and vocational training. Van Broeke–Pierce also noted the sexual nature of Smallwood's actions, writing: "Curtis has, at times, convinced himself that the women he has encountered in his burglaries are somehow going to magically turn into females who want relationships with him, including sexual relationships. Curtis is not a rapist, but he has significant female relationship and sexuality issues that could benefit from treatment."

The sentencing court found that Smallwood lacked control over his behavior. The court also noted a "pattern of increasing dangerousness." Further, the fact that Smallwood touched and rubbed the body of the victim was found to be an aggravating factor by the sentencing court.

Smallwood argues that the aggravating factor, the "sexual component" of the crime, would normally justify a doubling of the presumptive sentence. *See State v. Evans,* 311 N.W.2d 481, 483 (Minn.1981) (explaining that for court to impose more than double the presumed sentence, unusually compelling circumstances must exist). Smallwood relies upon the court of appeals' decision in *State v. Kimmons* to demonstrate his sentence is unfair. 502 N.W.2d 391 (Minn.App.1993). In *Kimmons,* the court of appeals reduced the

sentence of defendant who was convicted of robbery and had prior convictions for three burglaries, a first-degree robbery, two second-degree robberies, a third-degree criminal mischief, an assault with intent to do bodily harm, and four misdemeanors. The defendant qualified as a dangerous offender and was sentenced to 108 months. *Id.*[9]

While we acknowledge that Smallwood's sentence represents a more than quadruple departure from the sentencing guidelines, under the dangerous offender statute the trial court was within its discretion in imposing a 240–month sentence. The trial court found that Smallwood was engaged in a "continuous pattern of criminal conduct since reaching [his] adulthood." After a careful review of the record combined with our collective experience reviewing criminal appeals from across the state, we are convinced that a 240–month sentence is not disproportionate given Smallwood's criminal history, the seriousness of the crime of conviction, and the results of the presentence investigation. Therefore, we affirm the sentence of the trial court.

Reversed.

---

9. Smallwood, who is African–American, also points to *State v. Williams,* where we stated that we would "closely monitor and scrutinize sentencing practices to insure that defendants of color are not given harsher sentences * * * than Caucasian defendants." 525 N.W.2d 538, 549 (Minn.1994). Nothing in the record indicates that Smallwood's sentence was based upon race.