*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2408**

Matthew Thomas Fahey, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent

**Filed September 8, 2014
Affirmed
Worke, Judge
Concurring in part, dissenting in part, Cleary, Chief Judge**

Renville County District Court
File No. 65-CR-10-149

Kyle D. White, St. Paul, Minnesota; and

Matthew R. Wasik, Stillwater, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota;

David Torgelson, Renville County Attorney, Olivia, Minnesota; and

Scott A. Hersey, Special Assistant County Attorney, St. Paul, Minnesota (for respondent)

Considered and decided by Worke, Presiding Judge; Cleary, Chief Judge; and Rodenberg, Judge.

UNPUBLISHED OPINION

**WORKE**, Judge

Appellant challenges the denial of his petition for postconviction relief, arguing that his trial and appellate counsel were ineffective, his sentence should be reviewed because the district court failed to consider mitigating factors or newly discovered evidence, and his sentence does not satisfy due-process requirements.  We affirm.

## FACTS

On May 4, 2010, appellant Matthew Thomas Fahey abducted and raped a 14-year old girl and released her in a remote location unknown to her.  Fahey was indicted for criminal sexual predatory conduct, kidnapping, and two counts of first-degree criminal sexual conduct. The state sought enhanced penalties.

Two public defenders (trial counsel) represented Fahey.  Trial counsel contemplated whether to seek a mental competency examination for Fahey under Minn. R. Crim. P. 20, but "found no basis either in their conversations with [Fahey] or in the medical records" to suggest the need for an examination.  Fahey pleaded guilty to all charges except for one count of first-degree criminal sexual conduct.

Before sentencing, Fahey dismissed trial counsel and hired a new attorney (appellate counsel), who moved for a rule 20 examination.  The district court explained its reasons for denying the rule 20 motion:

> During various hearings in May and June of 2010 (May 6, May 13, May 20, June 3, June 10), and July 23, 2010, [trial] counsel informed the [c]ourt they were considering the need for a Rule 20 evaluation of [Fahey].  [Trial] [c]ounsel reviewed all medical records (which, the [c]ourt presumes,

are the same records which accompany the current motion) and had multiple opportunities to discuss the case with [Fahey]. On July 30, 2010, [trial counsel] informed the [c]ourt that [they] . . . found no basis either in their conversations with [Fahey] or in the medical records to warrant a Rule 20 evaluation. Neither the [c]ourt nor the [s]tate was aware of evidence to the contrary.

On December 16, 2010, [Fahey] appeared with [trial] counsel in a pre-trial [h]earing and waived his right to a jury trial. [Trial] counsel inquired of [Fahey] for approximately 8 minutes and subsequently the [c]ourt inquired of [Fahey] for an additional 10 minutes. There is no evidence during this [h]earing that [Fahey] was suffering from a mental illness such that he was incapable of understanding the proceedings. His answers to both direct and leading questions indicated he did understand the proceedings and was able to participate with his attorneys during the proceedings.

On the first day of trial, January 25, 2011, [Fahey] entered a plea of guilty to the offense as noted in the record with the exception of the heinous element and aggravating sentencing factors. During this hearing, the [c]ourt and [trial] counsel questioned [Fahey] for approximately 40 minutes. [Fahey] answered all questions appropriately and understandably. [Fahey's] conduct during this hearing indicated he was able to understand the proceedings and to participate in the proceedings with his attorney[s].

[Fahey] has presented no new evidence to indicate that, since the January 25, 2011 [h]earing, [he] is now suffering from a mental illness or is so mentally deficient such that he cannot participate in the sentencing portion of this proceeding. All medical evidence pre-dates the filing of criminal charges and was available to the [c]ourt and counsel from the beginning of this case.

The district court determined that aggravated sentencing factors existed and imposed concurrent sentences of 202 months on the criminal sexual predatory conduct

3

offense and 404 months on the first-degree criminal sexual conduct offense, both double durational departures from the presumptive guidelines sentences.

On direct appeal, Fahey argued that the district court erred by refusing to order a rule 20 examination. We upheld the district court's determination that no rule 20 examination was warranted, and concluded that, even if warranted, the rule 20 motion did not satisfy the requirements of the rule. *State v. Fahey*, No. A11-1760, 2012 WL 3085687, at *3 (Minn. App. July 30, 2012). We noted that "[t]he fatal weakness of Fahey's request . . . is that it is simply too late. In essence, Fahey's [appellate counsel], who was brought into the case after Fahey's guilt was determined, is second-guessing the strategy of Fahey's [trial counsel]." *Id.* We also said that "Fahey's mental-health history was well known to both his [trial counsel] and to the district court. The record suggests that Fahey could not develop and present evidence that would satisfy a mental-illness defense." *Id.* at *4. Moreover, we reviewed Fahey's conduct during the crimes and concluded that his actions suggested that he "knew that he was committing a wrongful act." *Id.*

Approximately three years later, on March 20, 2013, Fahey was civilly committed as mentally ill. He was diagnosed as having "Psychosis NOS, rule out Schizophrenia, rule out Bipolar disorder," and demonstrating grossly disturbed behavior or faulty perceptions when not medicated, including "severe disorganized and delusional behaviors."

Fahey petitioned for postconviction relief on July 19, 2013, seeking to vacate his conviction or modify his sentence, arguing ineffective assistance of trial and appellate

counsel, and newly discovered evidence. The district court summarily denied the petition, concluding that trial counsels' decision not to seek a rule 20 examination was strategic and did not show ineffective assistance of counsel; that while appellate counsel's failure to present mitigating factors related to Fahey's mental illness for sentencing purposes may have fallen below the objective standard for attorney performance, appellate counsel's failure would not have altered the duration of Fahey's sentence; and that the alleged new evidence either came into existence after Fahey was sentenced or was cumulative of other evidence of Fahey's mental illness.

**D E C I S I O N**

An appellate court "review[s] the denial of postconviction relief for an abuse of discretion," reviewing legal conclusions de novo and factual findings for clear error. *Greer v. State*, 836 N.W.2d 520, 522 (Minn. 2013). A postconviction petition is procedurally barred, following direct appeal, for any claim "known but not raised," unless the claim should be heard in the interests of justice or because a novel legal issue is presented. *State v. Knaffla*, 309 Minn. 246, 252-53, 243 N.W.2d 737, 741 (1976); *see Powers v. State*, 731 N.W.2d 499, 502 (Minn. 2007) (listing *Knaffla* exceptions); *see also* Minn. Stat. § 590.01, subd. 1 (2012) ("A petition for postconviction relief after a direct appeal has been completed may not be based on grounds that could have been raised on direct appeal of the conviction or sentence."); *Quick v. State*, 692 N.W.2d 438, 439 (Minn. 2005) ("*Knaffla* also bars claims that should have been known at the time of direct appeal."). The district court must grant an evidentiary hearing on a petition for postconviction relief "[u]nless the petition and the files and records of the proceeding

conclusively show that the petitioner is entitled to no relief[.]" Minn. Stat. § 590.04, subd. 1 (2012).

*Ineffective-counsel claims*

Appellate courts analyze postconviction ineffective-assistance-of-counsel claims "under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, [2064] (1984)." *Andersen v. State*, 830 N.W.2d 1, 10 (Minn. 2013). "[T]o receive an evidentiary hearing on a postconviction claim of ineffective assistance of . . . counsel, a defendant is required to allege facts that, if proven by a fair preponderance of the evidence, would satisfy the two-prong test announced in *Strickland*." *State v. Nicks*, 831 N.W.2d 493, 504 (Minn. 2013) (quotation omitted). Under *Strickland*, "an appellant must demonstrate that counsel's performance fell below an objective standard of reasonableness, and that a reasonable probability exists that the outcome would have been different but for counsel's errors." *Dereje v. State*, 837 N.W.2d 714, 721 (Minn. 2013) (quotation omitted). Counsel is held to an objective standard of reasonableness of "the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances." *State v. Hokanson*, 821 N.W.2d 340, 358 (Minn. 2012) (quotation omitted), *cert. denied*, 133 S. Ct. 1741 (2013). "Because claims of ineffective assistance of counsel are mixed questions of law and fact, [appellate courts] review the postconviction court's legal conclusions on such questions de novo." *Nicks*, 831 N.W.2d at 503.

Normally, counsel is given "wide latitude" in determining trial strategy. *Id.* at 506. "The extent of counsel's investigation is considered a part of trial strategy." *Opsahl*

6

*v. State*, 677 N.W.2d 414, 421 (Minn. 2004). But a petitioner may establish a claim of ineffective-assistance of counsel when "counsel's conduct . . . suggest[s] that [the] failure to investigate thoroughly resulted from inattention, not reasoned strategic judgment." *Wiggins v. Smith*, 539 U.S. 510, 526, 123 S. Ct. 2527, 2537 (2003) (cited in *Nicks*, 831 N.W.2d at 505).

As to trial counsel, Fahey asserted only broad allegations that they should have done more to investigate his mental-health status before deciding not to pursue a rule 20 examination. But trial counsel did investigate whether to advance a rule 20 motion, and the district court found that

> counsel reviewed all medical records . . . and had multiple opportunities to discuss the case with [Fahey]. On July 30, 2010, one of [trial counsel] informed the [c]ourt that [they] found no basis either in their conversations with [Fahey] or in the medical records to warrant a rule 20 evaluation. Neither the [c]ourt nor the [s]tate was aware of evidence to the contrary.

The district court also reviewed the opportunities that trial counsel and the court had to interact with Fahey during hearings and concluded that Fahey was fully able to participate in the proceedings. In addition, trial counsel were likely aware that facts surrounding the crime itself showed evidence of Fahey's mental competency, including his stalking the victim, threatening her to gain compliance, completing the crime in isolation, preventing the victim from knowing her whereabouts or using her cell phone, and apologizing to the victim after the crime. This record does not demonstrate that trial counsel's representation fell below an objective standard of reasonableness or

7

competence under *Strickland*. Thus, the district court did not abuse its discretion by summarily denying Fahey's postconviction petition as to trial counsels' representation.

Fahey's first appellate counsel began representing him posttrial but before sentencing, through direct appeal. Appellate counsel moved for a rule 20 examination, but did not seek a reduction in Fahey's sentence for mental-health reasons or appeal the aggravated sentence, which, at 404 months, was at the extreme upper end of the sentencing range for a first-time offender. While the district court found that appellate counsel's representation was unreasonable under *Strickland*, it also found that the second *Strickland* prong of was not satisfied because Fahey could not show that but for appellate counsel's performance, his sentencing outcome would have been different.

A district court's decision to depart from the sentencing guidelines will be reversed only if the court abused its discretion. *State v. Oberg*, 627 N.W.2d 721, 724 (Minn. App. 2001), *review denied* (Minn. Aug. 22, 2001). The district court must weigh the reasons for and against a sentencing departure, *State v. Curtiss*, 353 N.W.2d 262, 263-64 (Minn. App. 1984), including the consideration of mental illness as a mitigating factor. *State v. Sanford*, 450 N.W.2d 580, 588 (Minn. App. 1990), *review granted* (Minn. Feb. 28, 1990), *and order granting review vacated* (Minn. Mar. 22, 1990). But the district court is not required to grant a departure just because a mitigating factor exists. *Oberg*, 627 N.W.2d at 724.

Further, to be used as a mitigating factor at sentencing, "a defendant's impairment must be extreme to the point that it deprives the defendant of control over his actions." *State v. McLaughlin*, 725 N.W.2d 703, 716 (Minn. 2007) (quotation omitted). In

8

*McLaughlin*, the supreme court concluded that the defendant's mental impairment was not of the severity required for use as a mitigating sentencing factor on multiple homicide convictions because the mental impairment "was only a subtle form of schizophrenia and was not an extreme mental illness." *Id.* (quotation marks omitted). Likewise, at the time of sentencing, Fahey's mental condition, while serious, fell short of demonstrating that he lacked control over his actions.[1] Thus, although appellate counsel should have argued for a mitigated sentence due to Fahey's mental condition, the failure to do so did not amount to ineffective assistance of counsel under *Strickland*.

Further, Fahey cannot satisfy the second prong of *Strickland*. Even if the district court had fully realized the extent of Fahey's mental condition, Fahey cannot show that this mitigating factor would have altered the district court's exercise of discretion at sentencing. The act of imposing sentence is a pure exercise of a district court's discretion, and a court is given great leeway at sentencing, as long as the sentence imposed is within the ranges provided by the sentencing guidelines and the criminal statutes. *See State v. Olson*, 325 N.W.2d 13, 18 (Minn. 1982) (stating that sentencing "within the limits prescribed by the legislature is purely a judicial function"). Given that the district court found Fahey's crimes to be both heinous and aggravated for sentencing purposes, and given that the district court was apprised of Fahey's then-mental condition, we cannot conclude that a deeper awareness of Fahey's mental condition would have

---

[1] Fahey's mental-illness history is documented in his presentence investigation report and includes an August 2009 diagnosis of psychosis, amphetamine-induced psychosis, and depression, and notes earlier diagnoses of "rule out bipolar disorder, rule out schizophreniform disorder, cognitive disorder, . . . personality disorder . . . with antisocial personality disorder features."

made any difference to the district court in imposing sentence. In the memorandum attached to its order denying Fahey's postconviction petition, the district court, the same judge who sentenced Fahey, suggested that any effort by Fahey to buttress the district court's knowledge of Fahey's mental condition would have made no difference in the district court's sentencing decision. Under these circumstances, Fahey cannot meet the second *Strickland* prong. Thus, the district court did not abuse its discretion by summarily denying Fahey's postconviction claim of ineffective assistance of counsel.

### *Sentencing issues*

In a related argument, Fahey asserts that the district court abused its discretion at sentencing and in denying his postconviction petition by "fully consider[ing] aggravating factors [at sentencing], [while] wholly disregard[ing] substantial and compelling mitigating factors."

We reject this argument for several reasons. First, Fahey failed to raise any sentencing issue on direct appeal, and the issue is therefore procedurally barred under *Knaffla*. Second, any issues involving Fahey's mental health were not raised by defense counsel as a mitigating factor for sentencing purposes. Third, to the extent that Fahey's mental health was presented to the district court at the time of sentencing through consideration of Fahey's rule 20 motion, the district court rejected the notion that Fahey's mental illness entitled him to mitigation of sentence. *See McLaughlin*, 725 N.W.2d at 716 (stating that for mental illness to be used as a mitigating factor in sentencing, "a defendant's impairment must be 'extreme' to the point that it deprives the defendant of control over his actions"). As the district court concluded in rejecting Fahey's rule 20

10

motion, Fahey's actions during commission of the crimes do not show that any mental impairment made him unable to control his actions. Rather, Fahey's conduct shows presence of mind and intent. And fourth, to the degree that Fahey was mentally impaired on the date of the offenses, the record includes evidence that his impairment could have been due to use of a controlled substance and not due to mental illness. Under these circumstances, the district court did not abuse its discretion by rejecting this postconviction claim.

### *Newly discovered evidence*

Fahey also argues that his postconviction civil commitment as a mentally ill person constitutes newly discovered evidence that entitles him to a new trial. To be granted a new trial because of newly discovered evidence, a petitioner must show

> (1)     [T]hat the evidence was not known to the defendant or his/her counsel at the time of trial; (2) that the evidence could not have been discovered through due diligence before trial; (3) that the evidence is not cumulative, impeaching, or doubtful; and (4) that the evidence would probably produce an acquittal or a more favorable result.

*Evans v. State*, 788 N.W.2d 38, 49 (Minn. 2010); *see State v. Rhodes*, 657 N.W.2d 823, 845 (Minn. 2003) (describing showing for third newly discovered evidence factor as requiring the evidence to be "material"). Each of the four requirements must be demonstrated in order to receive a new trial. *Rainer v. State*, 566 N.W.2d 692, 695 (Minn. 1997).

The district court found that even if facts surrounding Fahey's 2013 commitment constituted newly discovered evidence, Fahey failed to "identif[y] any specific

11

documents, reports, or other information that was knowable in 2011 and used in 2013, but that were not actually known to the [t]rial and [appellate] [c]ounsels in 2011." The district court also found that all parties to 2011 proceedings were "well aware of [Fahey's] organic mental condition," and that even if Fahey could provide new evidence of that condition, he could not meet the required showing that any such evidence was not cumulative. In addition to these findings, it also appears that all evidence Fahey wished to be known about his mental condition could have been discovered through due diligence before trial. As early as at the time of his plea petition, Fahey stated that he had been a patient in a mental hospital and had been treated by a psychiatrist, and at his plea hearing he stated that he was bi-polar, was taking five different medications, and had been on those medications for five years. Finally, new evidence of Fahey's mental condition would not have altered the result of Fahey's trial because of the high standard of proof required to excuse his conduct or mitigate his sentence.

Finally, as a separate issue, Fahey argues that his sentence does not comport with constitutional due process because it is fundamentally unfair to impose sentence on a person without knowing the extent of his mental illness. He contends that his sentence should be vacated or remanded for this reason. He also asserts that Minn. Stat. § 609.1055 (2012), which permits a court to place an offender with a serious and persistent mental illness on probation rather than commitment to imprisonment, should have applied in his case.

We reject Fahey's constitutional argument for the reasons enumerated above.  In addition, we decline to consider constitutional issues that are "raised for the first time on appeal . . . ."  *State v. Williams*, 794 N.W.2d 867, 874 (Minn. 2011).

**Affirmed**.

**CLEARY,** Chief Judge (concurring in part, dissenting in part)

I concur with the majority opinion that appellant's trial counsel did not provide ineffective assistance by declining to pursue a rule 20 evaluation. The record demonstrates that a rule 20 evaluation was contemplated but after trial counsel had an opportunity to investigate appellant's medical history and after both the attorneys and the district court had opportunities to interact with appellant, it was determined that an evaluation was not warranted. I therefore concur with the majority's decision that appellant's guilty plea should stand.

But I respectfully dissent from the decision that the district court did not abuse its discretion by summarily denying postconviction relief on appellant's claim that his sentencing and appellate counsel was ineffective. In my opinion, appellant has shown that he received ineffective assistance from his attorney during sentencing and on direct appeal. To show ineffective assistance of counsel, a defendant "must affirmatively prove that his counsel's representation 'fell below an objective standard of reasonableness' and 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Gates v. State*, 398 N.W.2d 558, 561 (Minn. 1987) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 2064, 2068 (1984)). The "objective standard of reasonableness" is defined as "representation by an attorney exercising the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances." *State v. Vang*, 847 N.W.2d 248, 266 (Minn. 2014) (quotations omitted). "A reasonable

probability means a probability sufficient to undermine confidence in the outcome." *Dereje v. State*, 837 N.W.2d 714, 721 (Minn. 2013) (quotations omitted).

Initially, appellant received ineffective assistance of counsel at the sentencing hearing. As the district court determined, sentencing counsel's representation fell below an objective standard of reasonableness in that he failed to raise or argue any mitigating sentencing factors to attempt to offset the aggravating sentencing factors. Notably, he failed to argue that a mental impairment justified a lesser sentence, even though he claimed during that same hearing that a rule 20 evaluation was appropriate to assess appellant's mental condition. *See* Minn. Sent. Guidelines II.D.2.a.(3) (2009) (stating that a mitigating factor that may be used as reason for a sentencing departure is that "[t]he offender, because of physical or mental impairment, lacked substantial capacity for judgment when the offense was committed"). When it denied the postconviction petition, the district court stated that any argument on mitigating circumstances would not have altered appellant's sentences. This statement was made after the fact, and it is unclear how this can be known to any degree of certainty. I believe that there is at least a reasonable probability that appellant's sentences would have been different if mitigating circumstances had been presented and argued at sentencing.

Sentencing counsel's representation also fell below that of a reasonably competent attorney when he apparently confused a civil commitment for sex-offender treatment with a civil commitment for treatment of a mental illness. Sentencing counsel argued that, because of appellant's mental illness, the district court should follow the suggestion in the presentence-investigation report that a commitment referral be made. That report

discussed a potential referral under Minn. Stat. § 609.1351 (2010), for commitment to the Minnesota Sex Offender Program.

Appellant's counsel's representation on appeal also fell below an objective standard of reasonableness in two ways. First, appellate counsel made inconsistent and ineffective arguments on appeal. As indicated in this court's opinion from the direct appeal, appellant argued in his appellate brief that the district court erred by not permitting him to withdraw his guilty plea, even though he had propounded an entirely different argument in district court, where he claimed that a rule 20 examination should be ordered to ensure that he understood the sentencing proceedings. *See State v. Fahey*, No. A11-1760, 2012 WL 3085687, at *2 (Minn. App. July 30, 2012). Appellant then suggested during oral argument on appeal that a rule 20 examination should have been ordered to explore a defense of mental illness or deficiency. *Id.* This court characterized appellant's arguments as "a moving target." *Id.*

Second, and perhaps most egregiously, appellate counsel's representation fell below an objective standard of reasonableness when he failed to appeal appellant's sentences, which were double durational departures from the presumptive guideline sentences on top of a life sentence. Appellant received a life sentence for first-degree criminal sexual conduct due to the district court's finding that the crime involved a "heinous element" in that appellant "without the [victim's] consent, removed [her] from one place to another and did not release [her] in a safe place." *See* Minn. Stat. § 609.3455, subds. 1(d)(8), 3(a) (2010). The district court then imposed a sentence for criminal sexual predatory conduct that was a double departure from the sentencing

guidelines and imposed a minimum term of imprisonment for first-degree criminal sexual conduct that was also a double departure from the sentencing guidelines. The district court's justification for departure relied on factors similar to those considered when the court determined that appellant committed a crime that involved a "heinous element," namely that appellant took the victim by force and that he released her in an unknown location that was not a safe place. Thus appellant's sentence for first-degree criminal sexual conduct was enhanced twice based on very similar aggravating factors. Had appellate counsel challenged the sentences on direct appeal, there is a reasonable probability that this court would have held that the extreme sentences were disproportional to the offenses and would have ordered modification of the sentences. *See, e.g.*, *State v. Smallwood*, 594 N.W.2d 144, 157 (Minn. 1999) (stating that an appellate court's decision whether to modify a sentence is based on its "collective collegial experience in reviewing a large number of criminal appeals from all the judicial districts") (quotation omitted); *State v. Goulette*, 442 N.W.2d 793, 795 (Minn. 1989) (modifying a sentence that unfairly exaggerated the criminality of the defendant's conduct); *State v. Schantzen*, 308 N.W.2d 484, 487 (Minn. 1981) (stating that an appellate court may modify a departure if it has a strong feeling that the sentence imposed is disproportional to the severity of the offense and the extent of the offender's criminal history). Instead, appellate counsel's failure to appeal the sentences barred a postconviction challenge to the sentences. *See* Minn. Stat. § 590.01, subd. 1 (2012) ("A petition for postconviction relief after a direct appeal has been completed may not be based on grounds that could have been raised on direct appeal of the conviction or

sentence."); *State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976) (holding that "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief").

Appellant's counsel's representation fell below that of a reasonably competent attorney in crucial ways during sentencing and on direct appeal. Because I believe that appellant's sentences would have been different absent counsel's errors, I would reverse and remand for resentencing.