**STATE of Minnesota, Respondent,**

v.

**Adolphus BROWN, Appellant.**

No. A07–599.

Supreme Court of Minnesota.

Jan. 5, 2011.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Donna J. Wolfson, Assistant County Attorney, Minneapolis, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Theodora Gaïtas, Assistant State Public Defender, St. Paul, MN, for appellant.

OPINION

ANDERSON, G. BARRY, Justice.

This appeal arises from appellant Adolphus Brown's convictions of attempted second-degree murder and possession of a pistol without a permit. Brown shot and wounded M.L. during a child-visitation altercation. During the omnibus hearing, Brown testified that he had a permit for the pistol he used to shoot M.L. At trial, Brown asserted claims of self-defense and defense of others and testified on his own behalf. On direct examination, Brown admitted that he did not have a permit for the pistol used to shoot M.L. On cross-examination, the State impeached Brown with Brown's omnibus-hearing statement that he had a permit for the pistol used to shoot M.L. After his convictions, Brown appealed to the court of appeals, claiming that the district court erred when it allowed the admission of Brown's omnibus-hearing statement. Brown argues that the statement should be excluded under Minn. R. Evid. 410 because it was made in connection with an offer to plead guilty. The court of appeals affirmed the district court. We reverse.

On June 14, 2006, Brown, M.L., and Brown's girlfriend were involved in a confrontation at a convenience store. Four children, including the six-year-old son of

818

Brown's girlfriend and M.L., were present during the confrontation, which stemmed from a dispute between Brown's girlfriend and M.L. over visitation of their son. M.L. testified that when he attempted to pick up his son, who was in the back seat of Brown's car, Brown's girlfriend ran toward him swinging her fists. M.L. grabbed her forearms and pushed her away to defend himself. Brown then shot M.L. and continued shooting at him as M.L. attempted to run away. M.L. was shot three times, in the arm, abdomen, and back.

Brown testified that, during the child-visitation altercation, M.L. had a knife in his hand, and M.L. said, "[i]f my kid ain't going nowhere, you ain't going nowhere," and "I'm going to show you something." Brown also testified that M.L. grabbed M.L.'s son by the arm and tried to pull him away from Brown's girlfriend. Brown testified that he saw M.L. grab and push Brown's girlfriend. Brown testified that he then took his pistol from the glove compartment of his car and shot at M.L. as M.L. started to run at him. Brown and his girlfriend then got into Brown's car and drove away with her son and the other three children.

Brown was charged with attempted second-degree murder, Minn.Stat. § 609.19, subd. 1(1) (2010), and with possession of a pistol without a permit, Minn.Stat. § 624.714, subd. 1a (2010).

At Brown's omnibus hearing the following exchange took place:

THE COURT: Mr. Brown, you're charged with attempted murder, I believe.

[THE STATE]: Attempted 2nd-degree murder, Your Honor, yes.

THE COURT: And we're here for a pretrial today. I've had the opportunity to talk this over in chambers and it's my understanding that the State has made an offer of—I can't remember what it was—one—

[THE STATE]: Your Honor, 130 months—130.5 months, bottom of the box.

THE COURT: OK. And is there a response by the Defendant? Does he—

[BROWN]: If it please the Court, I would like to say they offered me something but how can I accept that for—for trying—trying to take care of my family, my kids and my wife? I don't understand that.

THE COURT: The allegation is that you took a pistol and put five bullets in somebody. That isn't—

[BROWN]: That's not true, though.

THE COURT: That isn't exactly taking care of my family.

[BROWN]: That's not true, though.

THE COURT: I wasn't there. That's the allegation, that somebody ended up with five bullets in them.

[BROWN]: Nobody did, Your Honor.

THE COURT: What? Was it five bullets or—

[THE STATE]: It was five bullets. I believe three actually penetrated. One in the shoulder, one in the stomach, and one in the chest.

[BROWN]: He was on PCP and alcohol when he talked to my daughter and my wife. *I—I had a permit for it.* I mean I don't know what—What was I supposed to do?

THE COURT: Maybe you—your daughter and your wife could take a walk or call the police?

[BROWN]: That's what I tried to do when he attacked my car. That's what I tried to do.

THE COURT: Then go to trial and find out.

[BROWN]: Right. That's the way I feel.

THE COURT: That's apparently what their offer is. It's not something you're interested in, apparently.

[BROWN]: I'm just interested in the truth coming out. That's the only thing I'm interested in. I thought that's what's everybody is interested in, the truth.

THE COURT: That's what we're interested in.

[BROWN]: I'm looking forward to the truth coming out. That's why we're going to trial.

[BROWN'S COUNSEL]: Yep.

THE COURT: All right. What's the likely exposure—presumptive?

[THE STATE]: Presumptive is 153.

THE COURT: OK.

[THE STATE]: Your Honor, State is withdrawing that offer at this time and will likely file a motion for an upward departure.

THE COURT: What?

[THE STATE]: State is withdrawing the offer of 130.5 months and will likely file a motion for an upward departure.

[BROWN]: If it please the Court, Your Honor, I would like to say that it don't matter. There is no—Whatever ya'll gonna do, just do it. I mean like I had to do—like I had to make a choice to do what I felt I had to do so ya'll got to—

[BROWN'S COUNSEL]: You understand that we're setting this matter for trial?

[BROWN]: Right.

(Emphasis added.) Brown pleaded not guilty and claimed self-defense and defense of others.

At trial, Brown admitted on direct examination that he did not have a permit for the pistol he used to shoot M.L. The State pursued the issue on cross-examination, and Brown repeated his admission that he did not have a permit for the pistol. When the State continued to press Brown on the permit issue by asking, "And you recall being in court one other time," Brown's counsel interrupted with an objection but did not state the ground for the objection. The district court, the State, and Brown's counsel had an off-the-record discussion at the bench. The record does not reflect the results of the bench conference, but after the discussion, the State resumed cross-examination on the permit issue. The State asked Brown about his statement during the omnibus hearing that he had a permit to carry the pistol. Brown admitted making the statement and testified that he thought he did have a permit. He explained that he thought he had a permit because he had received a letter in the mail, visited an office at Minneapolis City Hall, and submitted an application to plainclothes Minneapolis police officers. The State challenged Brown about the location and layout of the office where Brown claimed to have turned in his application, and about the fact that Brown had neither the letter nor permit at trial. The line of questioning ended with this exchange:

[THE STATE]: All right. It's your testimony that when you were in front of the Judge on August 15th of 2006, you told him that you had a permit for that gun. Is that correct?

[BROWN]: That is correct, yes.

[THE STATE]: And it's your testimony today that you applied for that permit?

[BROWN]: That is correct.

[THE STATE]: OK. And do you have that permit with you today?

[BROWN]: No, I do not.

[THE STATE]: And you testified that you do not have a permit. Is that correct?

[BROWN]: Yes, that is correct.

In rebuttal, the State called as a witness a Hennepin County Sheriff's Office deputy who testified that the sheriff's office, not the city, runs the office where applications for permits to carry firearms are submitted. The deputy testified that the office is not located in Minneapolis City Hall and described office features that differed from Brown's description. The jury found Brown guilty of both attempted second-degree murder and possession of a pistol without a permit and the district court entered convictions on both charges. Brown appealed, arguing that the evidence at trial was insufficient to sustain the verdict and that admission of his omnibus-hearing statement violated Minn. R. Evid. 410. The court of appeals affirmed Brown's conviction of attempted second-degree murder. *State v. Brown*, 758 N.W.2d 594, 603 (Minn.App.2008). We granted Brown's petition for review.

Brown argues that the district court erred in admitting evidence that Brown contends should have been excluded under Minn. R. Evid. 410. Brown's counsel did not state the specific ground for the objection at issue on the record. Minnesota Rule of Evidence 103(a) states: "Error may not be predicated upon a ruling which admits ... evidence unless ... a timely objection ... appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context...." In other words, if an attorney fails to object to admission of evidence, or does object but fails to state the specific ground for that objection, the evidentiary issue generally is not preserved for appeal unless the ground for the objection is clear from the context of the objection. Minn.

R. Evid. 103(a)(1); *see also* Minn. R.Crim. P. 26.03, subd. 14(1) (2009) (amended Jan. 1, 2010). But Rule 103 goes on to state that "[n]othing in this rule precludes taking notice of ... plain errors affecting substantial rights although they were not brought to the attention of the court." Minn. R. Evid. 103(d). The comment to Rule 103(d) explains that the purpose of that provision is to allow plain-error review under Minn. R.Crim. P. 31.02 even when an attorney fails to make the record necessary for review under the other provisions of Minn. R. Evid. 103. *See* Minn. R. Evid. 103 comm. cmt.—1989. Therefore, we look to the context of the objection at issue in this case to determine if the specific ground for the objection is clear. If the specific ground for the objection is not clear from the context, then we review the admission of evidence under a plain-error analysis.

At trial, Brown's counsel objected after the State started a question with the phrase "And you recall being in court one other time." There are at least three plausible grounds for the objection: to the relevance of a prior court appearance; to the possibility that unfair prejudice would outweigh any probative value of any testimony admitted from a prior court appearance; and to the admissibility of any statement made at the prior court appearance under Minn. R. Evid. 410. We are unable to determine the specific ground for the objection from the context and, therefore, analyze whether the district court erred in admitting Brown's omnibus-hearing statement under a plain-error analysis.

■ Plain-error analysis involves four factors. Under the first three factors, there must be (1) error, (2) that was plain, and (3) that affected the defendant's substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn.1998); *see also* Minn. R.Crim. P. 31.02; *State v. Reed*, 737

N.W.2d 572, 583 (Minn.2007). If those three factors are met, we determine whether the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Griller*, 583 N.W.2d at 742 (quoting *Johnson v. United States*, 520 U.S. 461, 469, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)) (internal quotation marks omitted) (alteration in original). If all four factors are established here, the defendant is entitled to a new trial.

### A.

Brown argues that the district court's admission of his omnibus-hearing statement violated Minn. R. Evid. 410. Brown argues that we should look to the plain language of Rule 410, as well as the policy behind that rule, and conclude that Brown's omnibus-hearing statement was inadmissible. The State contends that Brown's omnibus-hearing statement was admissible under the plain language of Rule 410. The State argues that because only a defendant has the ability to plead guilty, then only a defendant has the ability to "offer to plead guilty" under the rule.

■ In determining whether admission of evidence violates Minn. R. Evid. 410, we review a district court's findings of fact for clear error and review the court's legal conclusions de novo. *State v. Blom*, 682 N.W.2d 578, 615 (Minn.2004). Because the parties do not dispute the facts relevant to the Rule 410 issue here—the statement made in the on-the-record discussion at Brown's omnibus hearing—we undertake a de novo review of the law, and apply that law to the undisputed facts.

■ "When interpreting the Minnesota Rules of Evidence, we first look to the plain language of the rule." *State v. Stone*, 784 N.W.2d 367, 370 (Minn.2010). Minnesota Rule of Evidence 410 states in relevant part:

> Evidence of a plea of guilty, later withdrawn ... or of *an offer to plead guilty* ... to the crime charged or any other crime *or of statements made in connection with any of the foregoing pleas or offers*, is not admissible in any ... criminal ... action, case, or proceeding whether offered for or against the person who made the plea or offer.

(Emphasis added.) The language of Rule 410 and our case law make clear that Rule 410 applies to withdrawn guilty pleas, to express offers to plead guilty, and to statements made in connection with those offers in the context of formal plea negotiations with the State. *See, e.g., State v. Jackson*, 325 N.W.2d 819, 820–24 (Minn. 1982). Brown neither pleaded guilty nor made an express offer to plead guilty. But he argues that his omnibus-hearing statement was made "in connection with" an offer to plead guilty and should therefore be inadmissible under Minn. R. Evid. 410. The facts of this case present an issue of first impression in Minnesota: whether Rule 410 applies to statements made by a defendant in connection with plea discussions, or in connection with offers of settlement made by the State, when the statements by the defendant are made in open court and in response to questions posed by the district court.[1]

---

**1.** The court of appeals based its decision in this case, in part, on *State v. Smallwood*, 594 N.W.2d 144, 152 (Minn.1999). In *Smallwood*, we announced a test to determine whether the protections of Rule 410 applied to express offers to plead guilty when made to a police officer or other government agent, rather than in the course of plea negotiations with a prosecutor. 594 N.W.2d at 152. The court of appeals extended the *Smallwood* framework to the issue in this case. *See Brown*, 758 N.W.2d at 600–02. We reject this approach and decline to extend *Smallwood*.

### 1.

■ In discerning the plain and ordinary meaning of a word or phrase such as "offer to plead guilty," we consider the common dictionary definition of the word or phrase. *See State v. Hartmann*, 700 N.W.2d 449, 453–54 (Minn.2005). *Black's Law Dictionary* defines "offer" to include:

1. The act or an instance of presenting something for acceptance <the prosecutor's offer of immunity>. 2. A promise to do or refrain from doing some specified thing in the future, conditioned on an act, forbearance, or return promise being given in exchange for the promise or its performance; a display of willingness to enter into a contract on specified terms, made in a way that would lead a reasonable person to understand that an acceptance, having been sought, will result in a binding contract. . . .

*Black's Law Dictionary* 1189 (9th ed.2009).[2] Under the second definition, an "offer to plead guilty" includes a promise by a defendant to plead guilty in the future, when conditioned on an act or return promise given by the State in exchange for the defendant's promise to plead guilty. But a promise by a defendant to plead guilty also could be the return promise on which the State conditions a promise to do or refrain from doing some specified act in the future. It is our view that an "offer to plead guilty" by a defendant could be, and often is, specifically the return promise sought by the State promising to do or refrain from doing some specified act in the future during plea negotiations. Therefore, we decline to so closely parse the definition of "offer to plead guilty" that we exclude from Rule 410 a return promise by a defendant to plead guilty, when this return promise is the very thing sought by the State in exchange for the State's promise to act or refrain from acting.[3] In this case, the State's promised sentencing recommendation, described in open court, was a promise either conditioned on, or made in exchange for, an offer to plead guilty by Brown.

### 2.

■ "Whether a statement is 'made in connection with' a plea or plea offer requires an inquiry as to the facts of each case." *Blom*, 682 N.W.2d at 616 (stating that the plain language of Rule 410 "gives a district court little discretion to admit a defendant's statement if the statement is 'made in connection with' a plea or plea offer"). Brown did not offer to plead guilty in return for the promise by the State. He did, however, make several statements during an exchange with—and initiated by—the district court. The question presented here is whether those statements were "in connection with" the offer to plead guilty sought by the State.

■ At the omnibus hearing, the district court first referred to an earlier con-

---

**2.** *The American Heritage Dictionary* defines "offer" as "1. To present for acceptance or rejection. . . . 2a. To put forward for consideration; propose." *The American Heritage Dictionary* 1220 (4th ed.2009). *The Oxford English Dictionary* defines offer as the act of "propos[ing] or express[ing] one's readiness (to do something), conditionally on the assent of the person addressed." *The Oxford English Dictionary* 726–27 (2d ed.1991). And *Merriam–Webster's Collegiate Dictionary* defines "offer" as "presenting of something for acceptance . . . an undertaking to do an act or give something on condition that the party to whom the proposal is made do some specified act or make a return promise." *Merriam–Webster's Collegiate Dictionary* 805 (10th ed.2001).

**3.** Our conclusion is consistent with the purpose of Minn. R. Evid. 410: " 'to encourage frank discussion in plea bargaining negotiations.' " *Blom*, 682 N.W.2d at 616–17 (quoting *United States v. Arroyo–Angulo*, 580 F.2d 1137, 1148 (2d Cir.1978)).

versation held in chambers. The court then stated it did not remember the offer made by the State to Brown to resolve the case. The State responded by telling the court the offer was for 130.5 months, the low end of the guidelines range for attempted second-degree murder. The court asked if Brown had a response. Even though Brown was represented by counsel, he personally responded to the court's question with a question of his own, asking, "How can I accept [the State's recommended sentence] for—for trying—trying to take care of my family, my kids and my wife? I don't understand that." This exchange followed:

THE COURT: The allegation is that you took a pistol and put five bullets in somebody. That isn't—

[BROWN]: That's not true, though.

THE COURT: That isn't exactly taking care of my family.

[BROWN]: That's not true, though.

THE COURT: I wasn't there. That's the allegation, that somebody ended up with five bullets in them.

[BROWN]: Nobody did, Your Honor.

THE COURT: What? Was it five bullets or—

[THE STATE]: It was five bullets. I believe three actually penetrated. One in the shoulder, one in the stomach, and one in the chest.

[BROWN]: He was on PCP and alcohol when he talked to my daughter and my wife. *I—I had a permit for it.* I mean I don't know what—What was I supposed to do?

THE COURT: Maybe you—your daughter and your wife could take a walk or call the police?

[BROWN]: That's what I tried to do when he attacked my car. That's what I tried to do.

THE COURT: Then go to trial and find out.

[BROWN]: Right. That's the way I feel.

(Emphasis added.) The district court initiated the exchange with Brown, challenged Brown's characterization of his actions in a manner that went to the merits of Brown's anticipated self-defense claim, and brought the exchange to a close by directing Brown to "go to trial and find out." We conclude that Brown's statement that "[he] had a permit for it," made during the exchange with the court, was a statement made in connection with an offer to plead guilty under Rule 410. The court erred when it subsequently admitted the statement into evidence at trial and when it allowed the State to question Brown about the statement.

### B.

A "clear" or "obvious" error by the district court satisfies the second requirement that the error must be plain. *State v. Strommen,* 648 N.W.2d 681, 688 (Minn.2002) (citing *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). A district court error is "clear" or "obvious" when it contravenes a rule, case law, or a standard of conduct, or when it disregards well-established and longstanding legal principles. *See id.* (concluding that admission of evidence was plain error because that evidence "was clearly irrelevant and highly prejudicial" under Minn. R. Evid. 403); *State v. Burg,* 648 N.W.2d 673, 680 (Minn.2002) (concluding that it was plain error to fail to instruct a jury that the State had the burden of proving the absence of a fact, when the absence of that fact was an element of the crime); *State v. Ihle,* 640 N.W.2d 910, 917 (Minn.2002) (concluding that giving the jury an improper instruction was plain error because the court failed to include in the instruction factors that had been es-

tablished as necessary for 13 years). The error in this case contravened the plain language of Minn. R. Evid. 410, and therefore was clear, obvious, and plain.

## C.

▮ The third prong of the plain-error analysis considers whether the error affected the defendant's substantial rights. *Griller*, 583 N.W.2d at 740; *see also* Minn. R.Crim. P. 31.02; *Reed*, 737 N.W.2d at 583. An error affects a defendant's substantial rights when "there is a reasonable likelihood that the error substantially affected the verdict." *Strommen*, 648 N.W.2d at 688. For example, in *Strommen*, we held that the district court erred when it admitted evidence of the defendant's prior bad acts, and when it allowed a police officer to testify about the defendant's other contacts with police. *Id.* We held it was error to admit the officer's testimony because it reinforced the inadmissible evidence of the defendant's prior bad acts and because the defendant's identity was not at issue. *Id.*

In this case, Brown admitted at trial that he did not have a permit to carry the pistol used during the public confrontation with M.L. His admission satisfied the elements of possession of a pistol in public without a permit in violation of Minn.Stat. § 624.714, subd. 1a. *See State v. Timberlake*, 744 N.W.2d 390, 397 (Minn.2008) (reaffirming the interpretation of Minn. Stat. § 624.714 set forth in *State v. Paige*, 256 N.W.2d 298, 303 (Minn.1977)). Brown's omnibus-hearing statement that he did have a permit for the weapon was relevant solely to the charged violation of Minn.Stat. § 624.714, subd. 1a. *See* Minn. R. Evid. 401. But that offense was proven beyond a reasonable· doubt by Brown's admission that he brandished the weapon in public. His admission that he did not have a permit effectively waived the affirmative defense that a permit would have afforded him. Given that admission, there was no value to the State in Brown's omnibus statement testimony other than to impeach his credibility. Brown's credibility was fundamental to his claims of self-defense and defense of others, as his version of events differed from that of M.L. and a witness. Because of the importance of Brown's credibility to the outcome of the case, we conclude there is a reasonable likelihood that the district court's error in allowing repeated questioning about the omnibus-hearing statement substantially affected the verdict.

## D.

We now determine whether the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Griller*, 583 N.W.2d at 742 (quoting *Johnson*, 520 U.S. at 469, 117 S.Ct. 1544) (internal quotation marks omitted) (alteration in original). The district court allowed the State to cross-examine Brown about statements he made in connection with the State's offer to resolve the pending criminal charges, in open court, and in response to questioning by the court itself. Allowing the use of such evidence at trial undermines the purpose and language of Minn. R. Evid. 410 and calls into question the fairness and integrity of the judicial proceeding against Brown. A new trial on the charge of second-degree attempted murder is therefore necessary.

Because we hold that the admission of Brown's omnibus-hearing statement was plain error, we reverse the district court's conviction of Brown for attempted second-degree murder and remand for proceed-

ings consistent with this opinion.[4]

Reversed and remanded for new trial.

---

4. Because we hold that the admission of Brown's omnibus-hearing statement was plain error, we do not reach Brown's second claim, that there was insufficient evidence at trial to sustain the jury's verdict that Brown was guilty of attempted second-degree murder under Minn.Stat. § 609.19, subd. 1(1) (intentional).