*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0621**

State of Minnesota,
Respondent,

vs.

Terry Ross Johnson,
Appellant.

**Filed January 12, 2015
Affirmed in part, reversed in part, and remanded
Johnson, Judge**

Lac Qui Parle County District Court
File No. 37-CR-12-329

Lori Swanson, Attorney General, John Galus, Assistant Attorney General, St. Paul, Minnesota; and

Richard G. Stulz, Lac Qui Parle County Attorney, Madison, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Benjamin Butler, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Johnson, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

A Lac Qui Parle County jury found Terry Ross Johnson guilty of four counts of criminal sexual conduct. The district court imposed four concurrent prison sentences, the

longest of which is 360 months. We conclude that the district court erred by submitting count 3 to the jury as a second-degree offense after Johnson was acquitted of the first-degree offense that was charged in count 3 of the complaint. We also conclude that the district court did not err by denying Johnson's request for appointment of a different attorney to represent him at trial. Therefore, we affirm in part, reverse in part, and remand for vacatur of Johnson's sentence on count 3 and for resentencing on count 1 without consideration of the vacated prior conviction.

**FACTS**

In the fall of 2012, Johnson lived in Dawson with his wife and their ten children. A local school received reports that two of Johnson's daughters, A.R.J. and A.K.J., had been sexually abused. The investigation led to information that Johnson's step-daughter, V.D., also had been sexually abused.

In December 2012, the state charged Johnson with one count of criminal sexual conduct. The state amended the complaint four times before the case went to trial in December 2013. The fourth amended complaint alleged four counts: (1) first-degree criminal sexual conduct, in violation of Minn. Stat. § 609.342, subd. 1(g) (2014), for engaging in sexual contact with A.R.J., in 2012, when she was 15 years old; (2) second-degree criminal sexual conduct, in violation of Minn. Stat. § 609.343, subd. 1(b) (2014), for engaging in sexual contact with V.D. between 2000 and 2002, when she was 12 to 15 years old; (3) first-degree criminal sexual conduct, in violation of Minn. Stat. § 609.342, subd. 1(a), for engaging in sexual contact with A.K.J., between 2011 and 2012, when she was 9 to 10 years old; and (4) first-degree criminal sexual conduct, in violation of Minn.

2

Stat. § 609.342, subd. 1(a), for engaging in sexual contact with A.R.J. between 2004 and 2010, when she was 8 to 12 years old.

At trial, the state presented the testimony of A.R.J., V.D., A.K.J., and Johnson's wife. A.K.J. testified that Johnson touched her "private parts" with the palm of his hand, but she did not testify that Johnson sexually penetrated her, as the state was required to prove based on the offense alleged in count 3. *See* Minn. Stat. § 609.342, subd. 1(a). After the state rested, the district court judge and counsel met in chambers. Johnson's attorney indicated that he did not intend to call any witnesses. The prosecutor conceded that count 3 should be dismissed for insufficient evidence. The district court judge asked the prosecutor, "Are you asking for any lesser included?" The prosecutor responded, "I guess I never thought of that. I probably would ask for a lesser included."

Later, after the defense rested, Johnson's attorney moved to dismiss count 3. The prosecutor conceded that there was no evidence of penetration. But the prosecutor asked the district court to give a jury instruction on count 3 on the lesser-included offense of second-degree criminal sexual conduct, in violation of Minn. Stat. § 609.343, subd. 1(a). Johnson's attorney did not assert a double-jeopardy objection to the requested instruction on a second-degree offense. He responded only by arguing that the evidence is insufficient to prove the second-degree offense. The district court granted Johnson's motion to dismiss count 3 and, accordingly, did not instruct the jury on the first-degree offense alleged in count 3 of the complaint. But the district court granted the state's request for a lesser-included instruction and submitted count 3 to the jury as a second-degree offense.

The jury found Johnson guilty on all four counts. The district court imposed concurrent prison sentences of 21 months on count 2, 144 months on count 4, 91 months on count 3, and 360 months on count 1. Johnson appeals.

## D E C I S I O N

### I. Double Jeopardy

Johnson argues that the district court erred by submitting count 3 to the jury as a charge of second-degree criminal sexual conduct after dismissing the charge of first-degree criminal sexual conduct that was alleged in count 3 of the complaint. Johnson argues that the district court's submission of the second-degree charge, and his resulting conviction, violates the double-jeopardy provisions of the United States Constitution and the Minnesota Constitution.

Because Johnson did not assert a double-jeopardy objection at trial, this court reviews for plain error. *See* Minn. R. Crim. P. 31.02. Under the plain-error standard, an appellant is not entitled to relief on an issue to which he did not object unless (1) there is an error, (2) the error is plain, and (3) the error affects the appellant's substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). An error is "plain" if it is clear or obvious under current law, and an error is clear or obvious if it "contravenes a rule, case law, or a standard of conduct, or when it disregards well-established and longstanding legal principles." *State v. Brown*, 792 N.W.2d 815, 823 (Minn. 2011). An error affects the defendant's substantial rights "if the error was prejudicial and affected the outcome of the case." *Griller*, 583 N.W.2d at 741. If the first three requirements of the plain-error test are satisfied, this court then considers the fourth requirement, whether the error

4

"seriously affects the fairness, integrity or public reputation of judicial proceedings." *State v. Washington*, 693 N.W.2d 195, 204 (Minn. 2005) (quotation omitted).

The Fifth Amendment to the United States Constitution, which applies to the states through the Fourteenth Amendment, declares that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Minnesota Constitution likewise declares that "no person shall be put twice in jeopardy of punishment for the same offense." Minn. Const. art. I, § 7. The Minnesota Supreme Court has "interpreted Minnesota's Double Jeopardy Clause to be coextensive with its federal counterpart." *Rew v. Bergstrom*, 845 N.W.2d 764, 796 (Minn. 2014). Both double-jeopardy clauses prohibit the state from re-prosecuting a person for an offense after the person has been acquitted of that offense. *See, e.g.*, *Sanabria v. United States*, 437 U.S. 54, 64, 98 S. Ct. 2170, 2179 (1978); *Hankerson v. State*, 723 N.W.2d 232, 236-37 (Minn. 2006); *State v. Large*, 607 N.W.2d 774, 778 (Minn. 2000). Whether re-prosecution is barred by the double-jeopardy doctrine is a question of law. *State v. Chavarria-Cruz*, 839 N.W.2d 515, 520 (Minn. 2013).

In this case, it is undisputed that the first-degree charge that was alleged in the complaint and the second-degree charge of which Johnson later was convicted are the "same offense" for purposes of double jeopardy. *See, e.g.*, *Brown v. Ohio*, 432 U.S. 161, 166, 97 S. Ct. 2221, 2225-26 (1977) (quoting *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182 (1932)). The double-jeopardy analysis thus turns on the question whether Johnson was "acquitted" of the first-degree charge. Johnson relies on *State v. Sahr*, 812 N.W.2d 83 (2012), in arguing that the district court's grant of his mid-trial

5

motion to dismiss was an acquittal. The facts of *Sahr* are fairly similar to the facts of this case. In *Sahr,* the district court dismissed a charge of first-degree criminal sexual conduct because the evidence available to the state was insufficient. *Id.* at 86-87. The state requested an instruction on the lesser-included offense of second-degree criminal sexual conduct, but the district court denied the request, thereby refusing to allow the prosecution to proceed. *Id.* The supreme court upheld the district court's rulings and concluded that the district court's dismissal of the first-degree charge was an acquittal on the merits. *Id.* at 92. The supreme court stated, "A finding of insufficient evidence to convict amounts to an acquittal on the merits because such a finding involves a factual determination about the defendant's guilt or innocence." *Id.* at 90 (citing *Sanabria*, 437 U.S. at 59, 68-69, 98 S. Ct. at 2176, 2180-81). In this case, the state did not address *Sahr* in its responsive brief.

Also relevant to the analysis are *Smith v. Massachusetts*, 543 U.S. 462, 125 S. Ct. 1129 (2005), and *State v. Vang*, 700 N.W.2d 491 (Minn. App. 2005). In each case, a trial court granted a defendant's motion for a directed verdict after the state had rested its case-in-chief because the state's evidence was insufficient. *Smith*, 543 U.S. at 464-66, 125 S. Ct. at 1132-33; *Vang*, 700 N.W.2d at 493. In each case, the trial court later reconsidered its ruling and reinstated the previously dismissed charge after the defendant had rested. *Smith*, 543 U.S. at 465-66, 125 S. Ct. at 1133; *Vang*, 700 N.W.2d at 493. In each case, the jury found the defendant guilty of the reinstated charge. *Smith*, 543 U.S. at 466, 125 S. Ct. at 1133; *Vang*, 700 N.W.2d at 493. The Supreme Court held in *Smith* that the mid-trial acquittal on the merits must be considered final, even if it was erroneous.

6

*Smith*, 543 U.S. at 473, 125 S. Ct. at 1137. The Supreme Court reasoned, "any contention that the Double Jeopardy Clause must itself (even absent provision by the State) leave open a way of correcting legal errors is at odds with the well-established rule that the bar will attach to a preverdict acquittal that is patently wrong in law." *Id.* at 473, 1137. In *Vang*, this court applied *Smith* and reached the same result. *Vang*, 700 N.W.2d at 496. *Smith* and *Vang* illustrate that a trial court may not reinstate a charge after the trial court has ordered an acquittal on the merits and the defendant has rested. *Smith*, 543 U.S. at 472-73, 125 S. Ct. at 1136-37; *Vang*, 700 N.W.2d at 496.

In this case, the district court granted Johnson's motion to dismiss count 3 of the complaint because it determined that the state's evidence was insufficient to support a conviction of first-degree criminal sexual conduct. The district court's ruling is similar to the rulings at issue in *Smith*, *Sahr*, and *Vang*, which indicates that Johnson was acquitted of count 3 when the district court granted his motion to dismiss. *See Smith*, 543 U.S. at 466-67, 125 S. Ct. at 1133; *Sahr*, 812 N.W.2d at 88; *Vang*, 700 N.W.2d at 493; *see also Evans v. Michigan*, 133 S. Ct. 1069, 1074-75 (2013). Furthermore, the district court allowed the state to proceed with its prosecution of count 3 after Johnson had rested, which is similar to the procedural history of *Smith* and *Vang*. *Smith*, 543 U.S. at 465-66, 125 S. Ct. at 1133; *Vang*, 700 N.W.2d at 493. In light of these cases, Johnson's conviction on count 3 was obtained in violation of the Double Jeopardy Clause because he was acquitted of count 3 when the district court granted his motion to dismiss and, furthermore, because the district court reinstated count 3 after Johnson had rested. In

*Vang*, this court identified three possible exceptions to the double-jeopardy bar after a mid-trial dismissal:

> a midtrial dismissal ruling will be considered final unless it was (a) expressly qualified, or only tentatively stated, at the time it was made, or (b) made subject to a rule or case authority allowing the court to reconsider it [or (c)] was reconsidered before the trial proceeded, particularly to the defense's presentation of its case.

*Id.* at 495 (citing *Smith*, 543 U.S. at 472-73, 125 S. Ct. at 1136-37). None of the three exceptions applies in this case.

In its responsive brief, the state mostly avoids the issues that are necessarily part of the double-jeopardy analysis. For example, the state argues that the district court's action is permitted by a rule of procedure, which states, "The court may permit an indictment or complaint to be amended at any time before verdict or finding if no additional or different offense is charged and if the defendant's substantial rights are not prejudiced." Minn. R. Crim. P. 17.05. The state also argues that the district court's action is permitted by a statute that states, "Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included offense, but not both." Minn. Stat. § 609.04, subd. 1 (2012). The second argument is without merit because the next subdivision of the statute expressly bars re-prosecution in the present circumstances: "A conviction or acquittal of a crime is a bar to further prosecution of any included offense, or other degree of the same crime." *Id.*, subd. 2. Both of the state's arguments are without merit because they fail to acknowledge that the right against serial prosecution that Johnson is asserting is a constitutional right, which would supersede any rule or

8

statute that might authorize the district court's actions. *See Dickerson v. United States*, 530 U.S. 428, 437, 120 S. Ct. 2326, 2332-33 (2000). The state has not cited any case in which re-prosecution was permitted after a mid-trial dismissal for insufficient evidence. Thus, we conclude that the district court erred and that its error is plain in light of *Smith*, *Sahr*, and *Vang*.

The third requirement of the plain-error test asks whether a district court's plain error affected the defendant's substantial rights. *Griller*, 583 N.W.2d at 740. In this case, Johnson would have been acquitted of count 3 if the district court had not given the jury an instruction on second-degree criminal sexual conduct. But he was convicted of count 3 after the district court gave the instruction in violation of the Double Jeopardy Clause. The district court's plain error affected Johnson's substantial rights because he was convicted of a criminal charge of which he previously had been acquitted.

Furthermore, Johnson's conviction on count 3 added criminal-history points to the sentencing calculation on his subsequent conviction on count 1. It appears that, without a prior conviction on count 3, the presumptive guidelines sentence for count 1 would be considerably shorter than the guidelines range that the district court considered. *See generally* Minn. Sent. Guidelines § 4.B (2012). In light of the significant reduction in the applicable presumptive guidelines sentence, we further conclude that Johnson has satisfied the fourth requirement of the plain-error test. *See State v. Little*, 851 N.W.2d 878, 886 (Minn. 2014); *see also United States v. Davenport*, 519 F.3d 940, 947-48 (9th Cir. 2008) (concluding that appellant satisfied fourth requirement of plain-error test with respect to double-jeopardy argument).

In sum, Johnson is entitled to a remedy for the district court's plain error in submitting count 3 to the jury after he was acquitted of the same offense. We therefore reverse his conviction on count 3, and we remand to the district court for vacatur of his conviction and his sentence on count 3 and for resentencing on count 1 without consideration of the vacated prior conviction on count 3. In light of this relief, we need not consider Johnson's alternative argument that the district court erred by suggesting a lesser-included-offense instruction to the prosecutor.

## II. Appointment of New Counsel

Johnson also argues that the district court erred by denying his request for appointment of a different attorney to represent him at trial.

In October 2013, Johnson wrote a letter to the district court in which he asked for the appointment of a new public defender. His letter enumerated five reasons for his request: (1) his public defender had not visited him during the nine months he had been in jail, (2) his public defender had not given him a chance to submit a statement to the district court, (3) his public defender had failed to help him with certain unspecified issues, (4) he did not trust his public defender, and (5) he was "just not happy" with his public defender. Approximately a week later, the district court judge responded in a short letter. The district court stated that "[t]he court does not supervise the public defenders" and provided Johnson with the mailing address of the chief public defender for the Eighth District. Two days later, Johnson wrote another letter to the district court judge, again requesting a new public defender.

"When a defendant raises complaints about the effectiveness of appointed counsel's representation and requests substitute counsel, the district court must grant such a request only if exceptional circumstances exist and the demand is timely and reasonably made." *State v. Munt*, 831 N.W.2d 569, 586 (Minn. 2013) (quotation omitted). "[E]xceptional circumstances are those that affect a court-appointed attorney's ability or competence to represent the client." *State v. Gillam*, 629 N.W.2d 440, 449 (Minn. 2001). "When the defendant voices serious allegations of inadequate representation, the district court should conduct a searching inquiry before determining whether the defendant's complaints warrant the appointment of substitute counsel." *Munt*, 831 N.W.2d at 586 (quotation omitted). This court applies an abuse-of-discretion standard of review to a district court's denial of a request for appointment of new counsel. *Id.*

Johnson's letter complaining about his public defender was very general and lacking in specifics. The letter did not contain enough detail to indicate a significant issue concerning his public defender's competence. *See Gillam*, 629 N.W.2d at 449-50; *State v. Fagerstrom*, 286 Minn. 295, 299-300, 176 N.W.2d 261, 265 (1970). Without details and specifics, Johnson's letter did not suggest "serious allegations" of the type that are necessary to trigger a district court's obligation to inquire further. *Munt*, 831 N.W.2d at 587. Thus, Johnson has not shown that he was entitled to the appointment of a new attorney.

### III. *Pro Se* Arguments

Johnson has filed a five-page *pro se* supplemental brief. He does not make any specific legal arguments for reversal. He seeks to draw the court's attention to certain

types of evidence.  He also seeks to obtain additional forms of evidence, which is beyond the relief that this court can provide on a direct appeal from his conviction.  We have thoroughly reviewed his *pro se* supplemental brief, and we conclude that it does not contain any grounds for reversal.

**Affirmed in part, reversed in part, and remanded.**